## WEBB v. WEBB.
No. 62-1914-E.

Circuit Court, Duval County.

November 9, 1962.

A. H. Rothstein, Jacksonville, for plaintiff.

Fred Butler, Jacksonville, for defendant.

WILLIAM H. MANESS, Circuit Judge.

This cause is now before the court for the entry of a final decree after the court has personally heard the testimony produced on behalf of the plaintiff and the defendant, in support of both the complaint for divorce and on the counterclaim of defendant which first sought separate maintenance but was

amended at the outset of the hearing held October 30, 1962, so as to permit the defendant to seek a divorce, a vinculo matrimonii. The court has also heard and considered the argument of counsel and the entire record and proceedings herein including the testimony taken at the hearing on the faculties held July 26, 1962 before the Honorable Marion W. Gooding, acting in the absence of the undersigned judge.

As will more fully appear hereinafter, the marriage of these two parties began when the plaintiff was 33 years of age and the defendant was 18. As alleged in defendant's counterclaim, the plaintiff divorced the defendant in 1954 in a proceeding in which the defendant was awarded no alimony. Thereafter, the parties continued to live together until September of 1956 when they went through a marriage ceremony in Folkston, Georgia. The defendant-wife was employed most of the 18 years the parties lived together, both with and without the benefit of marriage, and, notwithstanding her present age of 36, is presently as capable of earning a livelihood as is plaintiff, whose present age is 51. Despite an indescribably rough 18 years of living together, this court finds that the straw that broke the camel's back and the final event that brought about the last separation and the institution of this proceeding was the occasion when the defendant made threatening gestures to the plaintiff with a butcher knife. Regardless of the prior provocation no other event seems to have been "out of bounds" in the wide latitude of cruelty each party inflicted upon the other as a "way of life". No children have been born to the parties.

The principal problem confronting this court is not a question of the amount of any alimony to which the defendant may be *legally* entitled, but whether or not the defendant-wife is entitled to *any* alimony at all. Here is a woman who married a man on December 31, 1945 and yet, despite the fact that on a number of occasions prior to their divorce in May of 1954 she claims he had beaten her up, come home with lipstick on his clothes, cursed and belittled her, she also testifies *they have never truly lived separate and apart*. This she asserts even though she knew he married another woman in June of 1954 and was not divorced from this wife until August of 1954. As a matter of fact, she testifies that while she permitted him to live with her in June, July and August of 1954 she did not even extract a promise from him that he would try to obtain a divorce from his lawful wife. Then, even when she knew he was divorced, she voluntarily lived with plaintiff and took much more abuse over a period of two years without requiring the formality of a marriage or even

a promise of a marriage. Under such circumstances, it really cannot be said that either of these parties regards the vows of matrimony or the obligations implied by law of any significance whatsoever. The alleged course of conduct of which the defendant complains has not varied in any significant degree during the 18 years of on and off marriage and but for the institution of this action (which defendant apparently regarded as an insult) the "way of life" to which defendant has long been accustomed would still be agreeable to her. For aught that appears to this court, based on the past performance of these parties, there is little reason to believe that the decree of this court will have any significance in the life of these parties—they will do as they please without regard to the marital status which each may occupy or which the morals and welfare of an ordered and stable society require.

Under the testimony in this case, it is difficult to regard these parties as "legally married" because of their failure to demonstrate any respect for what the law requires of those who enter this relationship so jealously regulated by the sovereign power of a state. (See 55 C.J.S. 806-809.) No attack is made on the validity of the belated Georgia ceremony and neither plaintiff nor defendant could attack such marriage. However, it must be remembered that a third party to this action is the state of Florida and this court is given the responsibility of protecting the interest of the public in such cases. See Hancock v. Hancock, 55 Fla. 680, 45 So. 1020.

Respect for and obedience to the vows of matrimony and the contract of marriage, as well as a decree dissolving the same, whether such marriage is entered into with a civil or religious ceremony or even by a valid common law agreement, is the foundation of an orderly and stable community and state. While the courts of this state should never deny the enforcement of the rights of a party to a contract, especially the right of a wife growing out of a valid marriage contract, the courts will not enforce certain otherwise valid or apparently valid contracts which contravene the public policy of this state, but will simply adjudge them void and unenforceable and leave the parties where they find themselves.

In the case at bar, if this so-called marriage is deemed valid, it is not because the parties actually intended such. They are insensitive to the sanctity of the obligations of such and this court finds that while the alleged marriage should be dissolved in the public interest, the parties themselves are deserving of

no relief. Despite the fact that such dissolution may inure more to the benefit of the plaintiff than the defendant, defendant cannot be heard to complain because of her own derelictions. She not only voluntarily took this risk from June of 1954 until September of 1956 but also ignored compliance with legal requirements and seeks the refuge and protection of the law *only* when it serves her purposes. Finally, it is she who this court finds to be the one more at fault than the plaintiff. Equity is a two way street and he or she who seeks to invoke it must have a good measure of it on his or her side. The right to permanent alimony rests in the sound discretion of the chancellor (see Cowan v. Cowan, 2 So.2d 869) and this court is of the opinion that the defendant-wife herein by her own conduct has forfeited the relief which a court of equity would otherwise grant. (See Longino v. Longino, 67 So.2d 203.)

Accordingly, it is ordered, adjudged and decreed as follows—

That plaintiff, Ray E. Webb, be, and he is hereby, granted a decree of divorce from the defendant, Bertie M. Webb, and the bonds of matrimony, if any, heretofore existing between said parties, should be and the same are hereby dissolved, a vinculo matrimonii.

That defendant's application for permanent alimony be and the same is hereby denied, but this shall not excuse the plaintiff from the payment of temporary alimony to the date of this decree.

That a reasonable fee for the services of defendant's attorney, Fred Butler, Esquire, is the sum of $1,000, and plaintiff shall pay to said attorney the said sum within 60 days from the date hereof, together with the costs, if any, which shall be taxed by this court upon motion after notice and hearing, less such sums which the plaintiff may have already paid as and for temporary attorney's fees and/or costs.

That this court retains jurisdiction of the parties hereto and the subject matter hereof to enter such further orders as may be necessary consistent with the findings herein and the orderly dissolution of the relationship heretofore existing between said parties.

That the transcribing and filing of the testimony herein shall not be required unless needed for the purposes of appeal by either party in which event this court will, by further order, direct such transcribing and filing.